IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| ANTHONY OLIVER, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Case No. 7:25-cv-120-WLS-ALS |
| | : | |
| GEORGIA DEPARTMENT OF | : | |
| CORRECTIONS; TYRONE OLIVER; | : | |
| RANDY SAULS;[1] SHARON LEWIS; | : | |
| BENJAMIN FORD; CENTURION OF | : | |
| GEORGIA, LLC; MHM | : | |
| CORRECTIONAL SERVICES LLC, | : | |
| | : | |
| Defendants. | : | |

## ORDER AND RECOMMENDATION

Plaintiff Anthony Oliver, a transgender[2] prisoner incarcerated at Washington State Prison in Davisboro, Georgia, filed a *pro se* 42 U.S.C. § 1983 complaint and motions to proceed *in forma pauperis* ("IFP"). (Docs. 1, 2, 9). On November 3, 2025, the Court ordered Plaintiff to file a recast complaint and a certified copy of her trust fund account statement. (Doc. 4). Plaintiff moved for an extension of time to comply with the Court's November 3, 2025 Order. (Doc. 7). That motion (Doc. 7) is **DENIED as moot** because Plaintiff has now filed both the recast complaint and a certified copy of her trust fund account statement. (Docs. 8, 9).

Plaintiff has three strikes under the Prison Litigation Reform Act ("PLRA"). 28 U.S.C. § 1915(g). However, as discussed below, she has alleged an imminent danger of serious physical injury. Thus, her motions to proceed IFP (Docs. 2, 9) are **GRANTED**.

---

[1] Although Plaintiff's handwriting is somewhat difficult to decipher, it appears the last name of this individual is "Sauls" as opposed to "Savis." https://gdc.georgia.gov/press-releases/2016-07-22/new-assistant-commissioner-health-services (last visited March 3, 2026). The Clerk is **DIRECTED** to correct the spelling on the docket.

[2] Plaintiff uses feminine pronouns and the Court, therefore, uses these pronouns as well. (Doc. 1, at 1 n.2).

On preliminary review, Plaintiff will be allowed to proceed with her Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Oliver, Sauls, Lewis, Ford, Centurion of Georgia, LLC ("Centurion"), and MHM Correctional Services, LLC ("MHM"); her Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims against the Georgia Department of Corrections ("GDC"), Centurion, and MHM; her First Amendment retaliation claims against Defendants Ford and Oliver; and her state law negligence claims against MHM and Centurion. However, it is **RECOMMENDED** that Plaintiff's Fourteenth Amendment equal protection claims against Defendants Ford and Oliver and her First Amendment access to courts claims against Defendants Ford and Oliver be **DISMISSED** without prejudice as discussed below.

### APPLICATION OF 28 U.S.C. § 1915(g)

Federal law bars a prisoner from bringing a civil action in federal court IFP

> if [she] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This is known as the "three strikes provision."

Under § 1915(g), a prisoner incurs a "strike" any time she has a federal lawsuit or appeal dismissed on the grounds that it is frivolous or malicious or fails to state a claim. *See Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999) (quoting 28 U.S.C. § 1915(g)). Once a prisoner incurs three strikes, her ability to proceed IFP in federal court is greatly limited: leave to proceed IFP is only allowed when "the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g). The United States Court of Appeals for the Eleventh Circuit has upheld the constitutionality of § 1915(g) because it does not violate an inmate's right to access the courts, the

doctrine of separation of powers, an inmate's right to due process of law, or an inmate's right to equal protection. *Rivera v. Allin*, 144 F.3d 719, 723-24 (11th Cir. 1998) (citations omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). A review of court records on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") database reveals that Plaintiff has filed hundreds of lawsuits in federal courts across the United States while incarcerated and at least three of her § 1983 complaints were dismissed as frivolous, malicious, or for failing to state a claim.[3] *See* Order, *Oliver v. Luner*, No. 22-11036 (11th Cir. June 24, 2022), Doc. 18-2 (finding appeal frivolous and dismissing); Order, *Oliver v. Cnty. of Isanti*, No. 0:10-cv-4218-ADM-JJG (D. Minn. Dec. 30, 2010), Doc. 8 (adopting R. & R. and dismissing action as frivolous, malicious, or for failure to state a claim under 28 U.S.C. § 1915A(b)(1) and noting the

---

[3] The Court notes that various courts have deemed Plaintiff to be a "vexatious litigant" and, as a result, have placed limitations on her ability to file civil lawsuits. *See Oliver v. City of Pooler*, No. 4:18-cv-100, 2019 WL 357980, at *1-3 (S.D. Ga. Jan. 29, 2019) (recommending filing restrictions because of "Oliver's persistent failure to abide by the Court's rules, procedures, and orders" and noting that her "ongoing conduct in h[er] various cases seems explicable only by culpable carelessness or a deliberate attempt to disrupt the efficient disposition of h[er] claims"), *report and recommendation adopted*, 2019 WL 1005198 (S.D. Ga. Feb. 28, 2019); *Oliver v. EHM Prods, Inc.*, No. 23-cv-2671-VC, 2023 WL 6519755, at *1 (N.D. Cal. Sept. 15, 2023) (granting a motion to declare Plaintiff a vexatious litigant after determining that Plaintiff "has a long track record of filing numerous unsuccessful lawsuits in both state and federal court[,]" and "[b]ased on h[er] litigation history, there is no basis for believing that [Plaintiff] will cease filing frivolous suits going forward"); *Oliver v. Luner*, No. 2:18-cv-2562-VAP (AFMx), 2018 U.S. Dist. LEXIS 220345, at *2-10 (C.D. Cal. Sep. 26, 2018) (citations omitted) (declaring Plaintiff a vexatious litigant after noting that she "has been warned about h[er] practices on multiple occasions by multiple judges in multiple districts, but has failed to guide h[er]self accordingly" and recognizing that (1) "Plaintiff was declared to be a vexatious litigant in the State of California in 2013"; (2) she filed numerous frivolous or malicious actions in federal courts around the country; and (3) federal courts have repeatedly chastised her for her conduct, such as filing unnecessary motions, unreasonably accusing opposing counsel of misconduct, and holding herself out to be a lawyer); *Oliver v. Cnty. of Los Angeles*, No. CV 15-7791-SJO (KKx), 2016 WL 11755117, at *13-14 (C.D. Cal. Feb. 16, 2016) (citation omitted) (stating that Plaintiff has "repeatedly filed deficient and frivolous complaints against Defendants" and noting that the San Bernadino Superior Court declared Plaintiff a vexatious litigant after she filed forty-two (42) cases in that state court between 2010 and 2013). When imposing her criminal sentence, the Superior Court of Chatham County, Georgia, noted that Plaintiff "has continuously and relentlessly filed frivolous lawsuits and made other unmeritorious legal claims against both a named victim as well as numerous other individuals." *See* https://researchga.tylerhost.net/CourtRecordsSearch/#!/case/4d31e5f488d85375a6377211bc17c674 (https://perma.cc/JLF8-WPCH) (May 15, 2023) (Order, at 6) (searched "Oliver, Anthony") (last visited Mar. 5, 2026). The court found that Plaintiff had "asserted claims and positions in numerous filings, with respect to which there existed an absence of any justiciable issue of law or fact, which [Plaintiff] could not have reasonably believed that a court would accept said claims and/or positions. The same being presented for the purpose of harassment and intimidation." *Id.* Given this, the Superior Court of Chatham County imposed various filing restrictions that apply to all civil actions that Plaintiff files in any Georgia state court. *Id.*

dismissal should count as a strike under 28 U.S.C. § 1915(g)); Order, *Oliver v. Reays Ranch Invs.*, No. 4:10-cv-158-JMR-PSOT (D. Ariz. July 19, 2010), Doc. 22 (dismissing action for failure to state a claim); Order, *Oliver v. Sloane*, No. 4:10-cv-169-JMR-PSOT (D. Ariz. June 8, 2010), Doc. 17 (dismissing action for failure to state a claim); Order, *Oliver v. Gore*, No. 3:09-cv-2505-BEN-POR (S.D. Cal. May 11, 2010), Doc. 19 (dismissing action for failure to state a claim and for failure to exhaust administrative remedies, which was apparent on face of the complaint). In 2023, the Eleventh Circuit upheld the United States District Court for the Southern District of Georgia's determination that Plaintiff was the plaintiff in *Isanti*, *Reays Ranch Invs.*, and *Sloane*, and that Plaintiff, therefore, has three strikes under § 1915(g). *See* Order, *Oliver v. Ameris Bank*, No. 21-13005 (11th Cir. Sept. 21, 2023), Doc. 29-1, at (noting that Plaintiff "knew about h[er] history of previous strikes" because she "twice had civil actions dismissed on grounds that [Plaintiff] was a three-striker under section 1915(g) (first citing *Oliver v. Kemp*, No. 1:19-cv-5014 (N.D. Ga. Dec. 12, 2019); and then citing *Oliver v. Chex Sys., Inc.*, No. 3:20-cv-30 (N.D. Ga. Apr. 21, 2020)).

Plaintiff is accordingly barred from prosecuting this action IFP unless she is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). To qualify for this exception, a prisoner must allege specific facts that describe an "ongoing serious physical injury," or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Sutton v. Dist. Att'y Off.*, 334 Fed. App'x 278, 279 (11th Cir. 2009) (internal quotation marks omitted). Complaints about past injuries are not sufficient. *See Medberry*, 185 F.3d at 1193. Vague and unsupported claims of possible dangers likewise do not suffice. *See White v. State of Colo.*, 157 F.3d 1226, 1231 (10th Cir. 1998). The exception to § 1915(g) is to be applied only in "genuine emergencies[,]" when (1) "time is pressing[,]" (2) the "threat or prison condition is real and proximate," and (3) the "potential consequence is 'serious physical injury[.]'" *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th

4

Cir. 2002).

Plaintiff states that prior to her 2019 incarceration, she was diagnosed with gender dysphoria. (Doc. 8, at 1, 6). She states she also suffers from post-traumatic stress disorder ("PTSD") but provides no additional details regarding this condition. *Id.* According to Plaintiff, she informed GDC, MHH, and Centurion in 2024 that she "wanted to start [taking] hormone replacement therapy" ("HRT"). *Id.* Plaintiff states that she started taking a testosterone blocker. *Id.*

Plaintiff alleges that she "informed Defendants GDC, Oliver, Ford, Sauls, Lewis, MHM, and Centurion in writing that [she] need[ed] [sex reassignment] surgery and they still refused[.]" *Id.* at 7. According to Plaintiff, the GDC's former endocrinologist informed her that she would never receive "sex reassignment surgery" from GDC, MMH, or Centurion. *Id.* at 6. Plaintiff states "the GDC transgender committee [is] made up of" Defendants Oliver, Ford, Sauls, and Lewis, and they have denied her "gender-affirming care[.]" *Id.*

Plaintiff states that on January 4, 2025, she was transferred to Wheeler Correctional Facility and started "filing offender grievances requesting sex-reassignment surgery." (Doc. 8, at 7). Plaintiff alleges that Defendants Oliver and Ford told her to drop the grievances or she "would be transferred to a facility with no law [library], photo copier, court forms[,] or any legal materials." *Id.*

Plaintiff states that on April 28, 2025, she was "illegally transferred to the Valdosta State Prison Annex[.]"[4] *Id.* Upon arrival, unnamed staff members confiscated her "bra, female products, offender tablet, hormone blocker pills, and informed [her that she] was being tak[en] off HRT."

---

[4] The Court notes that since filing this action, Plaintiff was transferred to Washington State Prison. (Doc. 10).

*Id.* Plaintiff states that unnamed staff also confiscated the disposable razors she used "to shave all [her] body hair." *Id.* Plaintiff states she filed "grievances to be placed back on HRT" but the grievances were denied. *Id.* Plaintiff alleges that she was removed from the mental health case load at Valdosta State Prison Annex. *Id.*

Plaintiff complains that on May 13, 2025, Defendant Ford called her a "FBI snitch" and told her that she would not be allowed to use the law library. *Id.* Plaintiff states that she had to hire an attorney to handle her habeas corpus action because she does not have access to a law library. *Id.* at 8. According to Plaintiff, she had to borrow "in excess of $18,468.12" to pay this attorney. *Id.*

Plaintiff states her requests to speak to a "new endocrinologist" and to be "reassessed for risk of sexual victimization and abuse" have also been denied. *Id.*

According to Plaintiff, without HRT and/or sex reassignment surgery, her "symptoms have got[ten] worse causing [her] to suffer from" various conditions, including "nightmares, anxiety, extreme loss of weight, depression[,] and emotional distress[,]" as well as "stomach pains, constipation, . . . suicidal thoughts, . . . and migraines." *Id.*

In a letter to the Court, Plaintiff provides somewhat contradictory information regarding the reason for discontinuation of HRT. (Doc. 12). In the letter, she states that she "was receiving [HRT] and other care from GDC but [she] was removed from all forms of transgender care due to S.B. 18[5]."[5] *Id.* She maintains that she is suffering from "internal bleeding and other physical injuries as a result of being taken off HRT and Estradiol 10 mg." *Id.*

Plaintiff seeks damages, injunctive, and declaratory relief. (Doc. 8, at 10).

---

[5] "Georgia Senate Bill 185 . . . went into effect upon approval by the Governor on May 8, 2025." *Benjamin v. Oliver*, 800 F. Supp. 3d 1314, 1323 (N.D. Ga. 2025) (citing 2025 Ga. Laws Act 69 § 2), *appeal docketed* No. 25-14263 (11th Cir. Dec. 5, 2025). It "amended O.C.G.A. § 42-5-2(e)(1) to preclude 'state funds or resources' from being used for, among other purposes, '[h]ormone replacement therapies' to treat gender dysphoria[.]" *Id.* (first alteration in original).

The relevant inquiry under § 1915(g) is "'not whether each specific physical condition or symptom complained of might constitute serious injury, but, rather, whether the complaint, as a whole, raises sufficient allegations.'" *Smith v. Ward*, 848 F. App'x 853, 856 (11th Cir. 2021) (citation omitted). Courts have found that "a diagnosis of gender dysphoria presents an objectively serious medical need." *Benjamin v. Oliver*, 800 F. Supp. 3d 1314, 1335 (N.D. Ga. 2025) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)); *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (stating that the Florida Department of Corrections acknowledges gender dysphoria is a serious medical condition). According to Plaintiff, the withdrawal of HRT has caused symptoms ranging from internal bleeding and extreme weight loss to depression and emotional distress. (Doc. 8, at 8; Doc. 12). Given these allegations, which the Court must accept as true at this stage in the litigation, Plaintiff has sufficiently alleged that she is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Consequently, Plaintiff's motions to proceed *in forma pauperis* (Docs. 2, 9) are **GRANTED** and Plaintiff's complaint is ripe for preliminary review.

**MOTION FOR LEAVE TO PROCEED IFP**

Even if a prisoner is allowed to proceed IFP, she must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, she must pay the filing fee in a lump sum. If sufficient assets are not in the account, the Court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because she has no assets and no means by which to pay the initial partial filing fee. *Id.* § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that she is unable to pay the initial partial filing fee. Accordingly, it is **ORDERED** that her complaint be filed and that she be allowed to proceed without paying an initial partial filing fee.

## I.   Directions to Plaintiff's Custodian

Plaintiff is required to make monthly payments of 20% of the deposits made to her prisoner account during the preceding month toward the full filing fee. The Clerk of Court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which she is held in custody, and any successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the PLRA, Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against her prior to the collection of the full filing fee.

## II.   Plaintiff's Obligations Upon Release

Plaintiff should keep in mind that her release from incarceration/detention does not release her from her obligation to pay the installments incurred while she was in custody. Plaintiff remains obligated to pay those installments justified by the income in her prisoner trust account while she was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's

8

Complaint may be dismissed if she is able to make payments but fails to do so or if she otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.     Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a

complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

II.    Plaintiff's Claims[6]

A.    Eighth Amendment Deliberate Indifferent to Serious Medical Needs claims against Defendants Oliver, Ford, Sauls, and Lewis

To state a claim for deliberate indifference to serious medical needs, a plaintiff must allege "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citation omitted). The first prong is objective, and

> a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

---

[6] The Court had to consider Plaintiff's factual allegations to determine if she adequately alleged an "imminent danger of serious physical injury" pursuant to 28 U.S.C. § 1915(g). The factual allegations are, therefore, set forth in full above and will be restated here only as they relate to each claim raised in the Recast Complaint.

recognize the necessity for a doctor's attention." In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (alteration in original) (citations omitted).

For the second element – deliberate indifference – a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law[.]'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (first citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020); and then quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). "'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" *Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (alterations in original) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)).

To show that a particular "defendant acted with 'subjective recklessness as used in the criminal law'" the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839, 844). However, even if the defendant was subjectively aware that his conduct placed the plaintiff at a substantial risk of serious harm, the defendant "cannot be found liable" if the defendant responded "reasonably" to the risk. *Id.* (quoting *Farmer*, 511 U.S. at 837, 844). Whether the defendant was subjectively aware of a serious risk of harm "is a question of fact

11

subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citations omitted).

Liability cannot be based on simple negligence or medical malpractice, but rather on some sort of conscious disregard for a serious and imminent risk. *Id.* at 834; *see also Wade*, 106 F.4th at 1253 (emphasizing that, in order to show a defendant acted with subjective recklessness, a "plaintiff must demonstrate that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm"); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (explaining that mere allegations of negligence or malpractice do not amount to deliberate indifference). A "simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" will not support a claim for deliberate indifference. *Harris*, 941 F.2d at 1505 (citation omitted). Whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted) (concluding that a dispute between two medical doctors about the adequacy of medical treatment provided – not about whether treatment was provided at all – suggested only medical negligence and was no grounds for section 1983 liability). Instead, a plaintiff must allege that the defendant's response to an objectively serious medical need "was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligence in diagnosis or treatment,' or even 'medical malpractice' actionable under state law[.]" *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (alterations adopted) (citations omitted); *see Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) ("Medical malpractice does not become a

12

constitutional violation merely because the victim is a prisoner.").

A prison official might act with deliberate indifference by denying or delaying medical care or by providing "medical care which is so cursory as to amount to no treatment at all[.]" *Dang ex rel. Dang*, 871 F.3d at 1280 (citations omitted). But "[s]ome delay in rendering medical treatment may be tolerable depending on the nature of the medical need and the reason for the delay." *Adams*, 61 F.3d at 1544.

The final prong simply requires "that a defendant have a causal connection to the constitutional harm." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326-27 (11th Cir. 2007) (citation omitted) (explaining that "as with any tort claim, [plaintiff] must show that the injury was caused by the defendant's wrongful conduct").

As stated above, gender dysphoria is considered to be a serious medical condition. According to Plaintiff, she informed Defendants Oliver, Ford, Sauls, and Lewis that she suffers from gender dysphoria and requested medical care. (Doc. 8, at 6-7). She was initially receiving some treatment for gender dysphoria, which apparently included HRT. (Docs. 8, at 6; 12). Plaintiff alleges that she is now denied any treatment at all for gender dysphoria. (Doc. 8, at 7; 12). While there may be no constitutional requirement that prison officials provide any one specific treatment for a prisoner with gender dysphoria, the complete denial of any care or treatment at all for this serious chronic medical condition might demonstrate deliberate indifference. *Keohane*, 952 F.3d at 1267 (citations omitted) (collecting cases that demonstrate "other courts considering similar policies erecting blanket bans on gender-dysphoria treatments—without exception for medical necessity—have held that they evince deliberate indifference to prisoners' medical needs in violation of the Eighth Amendment"); *Benjamin*, 2025 WL 3900855, at *10 (granting a permanent injunction and certifying classes on a permanent basis after finding that transgender inmates are

13

entitled to summary judgment on their claims for injunctive relief and certification of a class action as to deliberate indifference for blanket denial of access or consideration of hormone therapy). Plaintiff states that she now suffers from numerous serious mental and physical problems as a direct result of Defendants' denial of all care and treatment for gender dysphoria. (Doc. 8, at 8; 12).

At this stage in the litigation, Plaintiff has alleged sufficient facts to allow her Eighth Amendment deliberate indifference to serious medical needs claim to go forward against Defendants Oliver, Sauls, Ford, and Lewis for further factual development.[7]

> B.    Eighth Amendment Deliberate Indifference to Serious Medical Needs Claims against Defendants MHM and Centurion

Plaintiff alleges that Defendants MHM and Centurion are healthcare providers from which she receives services while incarcerated. (Doc. 8, at 5-6). "When [] private entit[ies] like [Defendants MHM and Centurion] contract[] with a [state] to provide medical services to inmates, [they] perform[] a function traditionally within the exclusive prerogative of the state." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (citations omitted). As such, they may be liable for constitutional injuries under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To state a claim under *Monell*, Plaintiff must allege facts demonstrating "(1) that h[er] constitutional rights were violated; (2) that the municipality [or private health care providers in this case,] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that

---

[7] The Court notes that Plaintiff states she raises "Supervisor Liability" claims against Defendants Oliver, Ford, Sauls, and Lewis. (Doc. 8, at 9). It is unclear to what she is referring. There is no supervisory liability under § 1983. *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). Additionally, it does not appear that Plaintiff seeks to hold Oliver, Ford, Sauls, or Lewis responsible for the unconstitutional acts of their employees. In fact, she has named no other individuals as defendants in this action. Instead, she alleges that Defendants Oliver, Ford, Sauls, and Lewis personally participated in various unconstitutional conduct. A supervisor, like any other state actor, may be held liable based on their personal participation in unconstitutional conduct. *Id.*

the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted).

Construing Plaintiff's complaint liberally, she alleges that Defendants MHM and Centurion previously had a policy or custom of providing individualized treatment to transgender inmates who suffer from gender dysphoria. During this time, she received HRT and other care. (Doc. 8, at 6-8). However, the providers' policy or custom changed after the enactment of Senate Bill 185. (Doc. 12). Pursuant to new law, their policy or custom is now to provide her with no treatment. (Doc. 8, at 6).

At this preliminary stage, construing Plaintiff's allegations liberally, Plaintiff has stated sufficient facts to allow her Eighth Amendment deliberate indifference to serious medical needs claim to go forward against Defendants MHM and Centurian for further factual development.

> C.     Disability Discrimination and Failure to Accommodate Claims under Title II of the ADA and Disability Discrimination Claim under Section 504 of the RA against Defendant GDC

Plaintiff states that she suffers from gender dysphoria, which, while noting that the Eleventh Circuit has not ruled as to this issue, she alleges is a disability under both the Americans with Disabilities Act ("ADA") and the Reasonable Accommodation ("RA") policy. (Doc. 8, at 6, 9). Construing her complaint liberally, she alleges that she is denied reasonable medical care and reasonable accommodations on the basis of this disability. *Id.*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the RA prohibits disability discrimination by "any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Given the similarities, the

same standards govern both. *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998). Thus, to state a claim under either, Plaintiff must allege facts demonstrating

> "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability."

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (quoting *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)). Only injunctive relief is available unless Plaintiff ultimately demonstrates that "the entity that [s]he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Id.* (quoting *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)).

As Petitioner acknowledges, the Eleventh Circuit has not ruled if gender dysphoria is a disability under the ADA or RA. The ADA excludes from coverage "gender identity disorders not resulting from physical impairments, or other sexual behavior disorders[.]" 42 U.S.C. § 12211(b)(1). Courts have determined, however, that "'nothing in the ADA, [at its enactment] or now, compels the conclusion that gender dysphoria constitutes a "gender identity disorder" excluded from ADA protection.'" *Doe v. Ga. Dep't of Corr.*, 730 F. Supp. 3d. 1327, 1348 (N.D. Ga. 2024) (alteration in original) (quoting *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022)), *appeal dismissed as moot*, 2025 WL 1206229 (11th Cir. Mar. 6, 2025). Additionally, "[m]ultiple courts have found that gender dysphoria qualifies as a disability under the ADA, as it 'substantially limits one or more life activities of' a diagnosed individual." *Id.* (first citing *Shorter v. Garland*, No. 4:19cv108-WS/MAF, 2021 WL 6062280, at *1 (N.D. Fla. Dec. 22, 2021); and then citing *Blatt v. Cabela's Retail, Inc.*, No. 5:14-cv-4822, 2017 WL 2178123, at *3 (E.D. Pa. May 18, 2017)). Thus, the Court is unable at this stage in the litigation to say that gender dysphoria is not

16

a disability under the ADA or RA.

Construed liberally, Plaintiff sufficiently alleges that her disability—gender dysphoria—is "a 'motivating factor' in [GDC's] decision to exclude" her from mental health care, reasonable medical care, and other necessary accommodations. *Id.* at 1349 (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1334 (11th Cir. 1999)). Thus, at this stage in the litigation, Plaintiff has alleged sufficient facts to allow her ADA and RA claims against Defendant GDC to proceed for further factual development.

D.    Disability Discrimination under Title III of the ADA against Defendants MHM and Centurion

Individuals and private entities are not subject to liability under Title II of the ADA. *See Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) (holding that "a private corporation is not a public entity merely because it contracts with a public entity to provide some service"). But private entities may be liable under Title III of the ADA, which forbids discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To state a claim under Title III, a plaintiff must allege that (1) [s]he 'is a disabled individual;' (2) 'the defendant owns, leases, or operates a place of public accommodation;' and (3) 'the defendant discriminated against the plaintiff within the meaning of the ADA.'" *Spradlin v. Toby*, No. 5:23-cv-328 (MTT), 2024 WL 3881483, at *9 (M.D. Ga. Aug. 19, 2024) (quoting *Gomez v. Gen. Nutrition Corp.*, 323 F. Supp. 3d 1368, 1374 (S.D. Fla. 2018)).

It is far from clear that prisons or jails are considered to be places of public accommodation under Title III of the ADA. *Compare id.* (citing 42 U.S.C. § 12181(7) and noting that a "penal facility is absent from the statutory definition of public accommodation" and no case law suggests

17

prisons are places of public accommodation), *and Edison v. Douberley*, No. 2:05-cv-307-FtM-29SPC, 2008 WL 4194813, at *4 (M.D. Fla. Sept. 9, 2008) (citations omitted) (stating that jails are not "place[s] of 'public accommodation'"), *and Collazo v. Corr. Corp. of Am.,* No. 4:11cv1424, 2011 WL 6012425, at *3 (N.D. Ohio Nov. 30, 2011) (first citing *Wattleton v. Doe*, No. 10-11969-JGD, 2010 WL 5283287, at *2 (D. Mass. Dec.14, 2010); and then citing *James v. Fed. Bureau of Prisons*, No. 1:04-CV-678, 2008 WL 686419, at *6 (E .D. Tex. Mar. 10, 2008)) (finding that a "jail or prison facility does not constitute a place of 'public accommodation' as defined in" Title III of the ADA), *with Doe*, 730 F. Supp. 3d at 1346 (citing *Hernandez v. Cnty. of Monterey*, 70 F. Supp. 3d 963, 978 (N.D. Cal. 2014)) (stating that "Title III . . . covers private healthcare operations in jails as a type of 'public accommodation'").

As discussed above in relation to Title II of the ADA, Plaintiff alleges that Defendants are discriminating against her on the basis of her disability by failing to allow her any access to any medical care, including any mental health care, and by failing to allow any reasonable accommodations for her gender dysphoria. (Doc. 8, at 6-8). Taking into consideration (1) the lack of controlling authority regarding whether private health care operations inside a prison are considered public accommodations, and (2) the liberal construction that must be applied at this stage in *pro se* proceedings, Plaintiff's disability discrimination claim brought under Title III of the ADA against Defendants MHM and Centurion may proceed for further factual development.

        E.        <u>Fourteenth Amendment Equal Protection Claims against Defendants Oliver, Sauls, Ford, and Lewis</u>

Plaintiff states her "sixth cause of action" is a "42 U.S.C. § 1983" claim for "14th Amendment Equal Protection." (Doc. 8, at 9). The basis for this claim, however, is unclear. To state a Fourteenth Amendment equal protection claim, Plaintiff must allege facts showing "that (1) [s]he is similarly situated to other prisoners who received more favorable treatment; and (2) the

state engaged in invidious discrimination against h[er] based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318 (11th Cir. 2006) (first citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); and then citing *Damiano v. Fla. Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)). Plaintiff has not alleged facts to show or support either element. Therefore, it is **RECOMMENDED** that Plaintiff's Fourteenth Amendment equal protection claims against Defendants Oliver, Sauls, Ford, and Lewis be **DISMISSED** without prejudice.

F.    First Amendment Retaliation Claims against Defendants Oliver and Ford

Plaintiff alleges that Defendants Oliver and Ford retaliated against her for filing grievances and/or civil lawsuits. (Doc. 8, at 6-7). According to Plaintiff, when she was incarcerated in Wheeler State Prison in January 2025, she submitted a grievance regarding "sex-reassignment surgery." *Id.* at 7. She claims that "Defendants Oliver and Ford travelled to Wheeler [State Prison] and instructed [her] to drop the grievance or [she] would be sent to a facility with no law library." *Id.* Plaintiff did not "drop" the grievance. *Id.* Plaintiff states that Defendants Ford and Oliver asked her if she planned to file a lawsuit regarding the surgery and when she responded that she did, they both said she would be transferred to a prison with no law library, copier, legal materials, or court forms. *Id.* Plaintiff alleges she was transferred to Valdosta State Prison Annex in April 2025 and there is no law library at this facility. *Id.* at 7-8.

Prisoners do not have a constitutionally protected right to remain in any particular prison. *See Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). They do, however, "have a right to be free of retaliatory transfer for the exercise of a constitutional right." *Adams v. James*, 797 F. Supp. 940, 947 (M.D. Fla. 1992) (citations omitted). At this stage in the litigation, Plaintiff has alleged sufficient facts to allow her First Amendment retaliatory transfer claim against Defendants Oliver

and Ford to proceed forward for further factual development.

G.    First Amendment Access to Courts Claim against Defendants Oliver and Ford

Plaintiff contends that her inability to access a law library and legal materials while she was incarcerated at the Valdosta State Prison Annex rendered her unable to research issues related to her criminal conviction, second and successive habeas, pending bench warrant, motion to correct her criminal sentence, and motion to vacate a protective order. (Doc. 8, at 7-8). Plaintiff asserts that she was forced to borrow money and hire a lawyer to file her "habeas, appeal, provide case law printouts, and to file numerous motions to vacate a protective [order,] and vacate/correct [her] sentence." *Id.* at 8.

The right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). To state a claim, a prisoner must allege actual injury to a qualified legal action. An actual injury means the "denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998); *see also Bass v. Perrin*, 170 F.3d 1312, 1320 n.13 (11th Cir. 1999) (citing *Wilson*, 163 F.3d at 1290) (stating "plaintiffs must show 'actual injury' - in other words, the plaintiffs must demonstrate that they had a legitimate claim that they were unable to pursue due to the prison's restrictions"). "Whether a plaintiff suffered 'actual injury' is a narrow inquiry, focusing solely on a prison official's interference with nonfrivolous appeals in a criminal case, petitions for habeas corpus, or civil rights actions."[8] *Maldanado v. Baker Cnty. Sheriff's Off.*, 513 F. Supp. 3d. 1339,

[8] The Court finds no cases holding that spending money to hire counsel amounts to an "actual injury" for purposes of an access to courts claim. Plaintiff is routinely represented by various counsel. *See Oliver v. Oliver*, No. 5:24-cv-182-CAR (M.D. Ga. June 7, 2024) (represented, at least for a period, by attorney McNeill Stokes); *Oliver v. Smith*, No.

1349 (M.D. Fla. 2021) (citing *Al-Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir. 2008)).

In this case, Plaintiff has not alleged an actual injury to a qualified legal action. She "does not, for instance, allege [s]he missed a deadline in a criminal, habeas, or civil rights case. Even more, Plaintiff does not discuss h[er] other lawsuits other than in generalizations." *Id.* Consequently, it is **RECOMMENDED** that Plaintiff's First Amendment denial of access to courts claim against Defendants Oliver and Ford be **DISMISSED** without prejudice.

H.      State law negligence claims against Defendants MHM and Centurion

Plaintiff seeks to bring a "negligence under state law claim" against Defendants MHM and Centurion. (Doc. 8, at 9). She provides no additional detail regarding the claim. It does not appear that any named Defendant is employed by Defendants MHM or Centurion. Thus, her negligence claim is presumably linked to Defendants MHM and Centurion's alleged policy or custom of denying all medical and/or mental health care for gender dysphoria. At this early stage in the litigation, the negligence claim may proceed for further factual development. However, the Court notes that should the federal claims over which this Court has original jurisdiction be dismissed at any stage, the Court will likely decline to exercise supplemental jurisdiction over Plaintiff's state law claim. 28 U.S.C. § 1367(c)(3).

III.    Conclusion

Plaintiff's motions to proceed IFP (Docs. 2, 9) are **GRANTED**. Plaintiff's motion for an extension of time (Doc. 7) is **DENIED** as moot. Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims may proceed against Defendants Oliver, Sauls, Lewis,

---

1:24-cv-70-WLS (M.D. Ga. May 13, 2024) (same). In a recent "Response to Court Order" filed in another of Plaintiff's civil actions, Plaintiff tells a different story about who is paying for her post-conviction counsel. She states that her "post-conviction attorney" is "paid for by the U.S. Government." *See* Response to Court Order, *Oliver v. West*, No. 5:25-cv-265-MTT-AGH (M.D. Ga. Oct. 6, 2025) (Doc. 19). Regardless of who pays for Plaintiff's postconviction counsel, the fact that Plaintiff has employed an attorney is not an "actual injury" as that phrase is understood in the context of an access to courts claim.

Ford, Centurion, and MHM; Plaintiff's ADA and RA claims may proceed against Defendants GDC, Centurion, and MHM; Plaintiff's First Amendment retaliation claims may proceed against Defendants Ford and Oliver; and Plaintiff's state law negligence claims may proceed against Defendants MHM and Centurion. However, it is **RECOMMENDED** that Plaintiff's Fourteenth Amendment equal protection claims against Defendants Ford and Oliver and Plaintiff's First Amendment access to courts claims against Defendants Ford and Oliver be **DISMISSED** without prejudice for failure to state a claim for which relief may be granted. 28 U.S.C. §§ 1915(e), 1915A(b).

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable W. Louis Sands, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Objections to the Recommendation are limited in length to twenty (20) pages. A party seeking permission to exceed these limitations shall do so by filing a written motion no later than five (5) days in advance of the deadline for filing objections and by specifying the number of pages requested. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to

challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants GDC, Tyrone Oliver, Randy Sauls, Sharon Lewis, Benjamin Ford, Centurion, and MHM, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that she must diligently prosecute her Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with her custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of her lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise

24

granted by the Court upon a showing of good cause therefor or a protective order is sought by the Defendant and granted by the Court. This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred-twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED and RECOMMENDED**, this 13th day of March, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE

25